### WILLIAMS et al. v. UNITED STATES.

(Circuit Court, D. South Carolina. October 1, 1900.)

EMINENT DOMAIN—TAKING FOR PUBLIC PURPOSES—INJURY INCIDENT TO IMPROVEMENT OF NAVIGATION.

Where the United States government, in the proper exercise of its powers, has undertaken the improvement of the navigation of a river, and by means of the dams and other works therein built has caused a permanent rise in the level of the water of such river, resulting in the flooding of rice land adjacent, which was previously protected by embankments, and drained into the river, so as to render it permanently valueless for any purpose, such action constitutes a taking of the land for public purposes, within the meaning of the fifth amendment to the constitution, and the owner is entitled to recover just compensation therefor.

Proceeding under Act of Congress to Establish a Claim against the United States.

Mitchell & Smith, for plaintiffs.
Abial Lathrop, U. S. Atty.

SIMONTON, Circuit Judge. This is a proceeding under the act of congress of March 3, 1887, giving this court co-ordinate jurisdiction with the court of claims in certain causes of action against the United States. The object of the proceeding is to obtain just compensation for certain lands alleged to have been taken by the government for public purposes. The cause of action is on the implied contract arising from such alleged taking to give just compensation therefor under the fifth amendment.

The cause being at issue was tried by the court, in accordance with the act of congress, without the aid of a jury.

### Findings of Fact.

(1) The above petition was made in compliance with the requirements of the act of March 3, 1887, duly filed in the clerk's office of the circuit court of the United States for the district of South Carolina, on the 22d day of March, 1897, and copies thereof duly served on the United States district attorney and the attorney general of the United States, and said law in all respects complied with.

(2) The plaintiffs are residents and citizens of the state of South Carolina, and are the owners in fee simple, as tenants in common, of a plantation situate in Beaufort county, in the state of South Carolina, on the Savannah river, known as "Beach Hill," containing

1,486 acres of high and rice land. They hold this plantation under sundry successive mesne conveyances showing a continuous unbroken chain of title from a grant of said land by the lord proprietors of South Carolina in 1738.

(3) A portion of this plantation—404.53 acres—has been cultivated in rice for a very long period of time, and has been so cultivated by the plaintiffs since their ownership of the said plantation in 1876 up to the time of the abandonment thereof.

(4) These 404.53 acres of rice land have been reclaimed by drainage, and the erection of dikes or banks, and have been used solely, and can be used only, for the purposes of raising rice. It was dependent for its irrigation upon the waters of the Savannah river and its ditches, drains, and canals, through and by which the waters of the river were flowed in and upon the lands, and were then drained herefrom, which were adapted to the natural level of the Savannah river, and dependent for its proper drainage and cultivation upon the maintenance of the natural flow of that stream through and over its natural channel along its natural bed to the waters of the ocean, and the maintenance of the natural level of the waters of that river.

(5) These acres of rice land were protected from the river by embankments erected upon lands of the plaintiffs, through which trunks or water ways were constructed with flood gates, which trunks were placed in such embankments, so that the bottoms thereof were a little above the mean low-water mark of the river. Through these the lands are irrigated, and through them also the lands are drained when the time comes for the draining the water off, and were dependent upon the natural rise and flow of the tide to effect this drainage. It is absolutely necessary, therefore, that the outlet of these trunks or water ways should always be above the mean low-water mark of the river. It is also absolutely essential to the production of rice and in the preparation of the lands therefor that at certain times the fields should be flooded and submerged with water, and that at other times they should be drained off so as to become perfectly dry.

(6) That for several years past the United States government, in the lawful exercise of its powers of eminent domain and regulation of commerce, under its proper officers, authorized thereto by acts of congress, has been making, and is now making, erecting, and maintaining, certain structures, dams, and training walls in the Savannah river, beginning at points below this plantation, and, in addition thereto, dumping mud and sand dredged from the Savannah river proper into the Savannah back river, below this plantation, tending thereby to stop up said river, and make the same shallow, and decrease and change the natural flow and current thereof.

(7) By reason of the erection and maintenance of these obstructions and the other work carried on by the said United States, the natural flow of said river in and along its natural bed has been obstructed and changed, and its waters have been caused to be kept back and to flow back, and to be lifted above its natural level in its natural bed.

(8) This plantation, Beach Hill, is situated on the Savannah back river, above these obstructions, and the direct effect thereof is to raise the level of the Savannah river at this plantation, to press it against

the embankments aforesaid, and so to keep the point of mean low water above its natural point, so that the outlet of the trunks and water ways in the banks of the said plantation, instead of being above the point of low-water mark, are now below the same, directly causing the water to lie, remain, and be upon the said plantation, without being capable of being drained off, and also by means of seepage and percolation causing the water to rise in the plantation itself until the water in the land gradually rose to the height of the increased water level in the river, and the superinduced addition of water in the plantation was about 20 inches; the result of which was that, not only was it impossible to let off the water, and drain the plantation, but that these acres cultivated in rice became sogged, sour, and absolutely unfit for the cultivation or production of rice, or, so far as is known, of anything else.

(9) By raising the level of the Savannah river by these dams, obstructions, and dumping of mud therein, the waters thereof have been raised and caused to flow back upon and in and over the said plantation, actually invading the same, directly raising the water in said plantation about 20 inches, which it is impossible to remove therefrom; and this flooding is now a permanent condition on said plantation, which has been reduced to a bog, unfit for the cultivation of anything, and has no value.

(10) By reason of the superinduced addition of water actually invading the said plantation, and its destruction thereby for any and all purposes for which it might be utilized, plaintiffs have been compelled to abandon the cultivation of said plantation, and have been forced to pursue their calling of planting rice elsewhere. The direct result to plaintiffs is, therefore, an actual and practical ouster of possession.

(11) That, in addition thereto, by the erection of such obstructions, dams, training walls, and dumping of refuse material, the freshets coming down the Savannah river, and overflow therefrom, have been kept back and held up for a much longer period than before the erection of such obstructions, etc., and cannot be gotten off the land, which thereby and therefrom became sodden, boggy, and sour, gradually lessening its productive power, so that in 1895 it became valueless, which is its present and permanent condition, and it is useless for the product of rice or any other commodity.

(12) This gradual result was begun to be felt when the cross-tides dam between Hutchinson's Island and Argyle Island was built, in 1885, the summit of which was brought up in 1890, and the effect of which has gradually grown worse, not only with the continuing erection of obstructions, and the dumping of material dredged from the Savannah river proper, but also from the continued process of seepage and percolation by which the lands gradually each year became more sodden, boggy, and sour, and unfit and incapable of producing rice, the only system of cultivation of which the land is capable. From these causes the plaintiffs were finally driven away, and compelled to abandon the said plantation, in the year 1895, and have been compelled to pursue their calling of planting rice on other places. The direct result to plaintiffs is, therefore, an actual and practical

ouster of possession and invasion and taking by the government of this plantation.

(13) Beyond the backing up of the water on and in the plantation by reason of the aforesaid obstructions, and other works of the government, and the holding back upon the plantation of the waters brought down by freshets, and this invasion of these lands by this superadded water around and in and upon the plantation as above described, rendered necessary by the execution of the government plans for the improving the navigation of the Savannah river, the United States government has not and does not use these lands for any purposes, nor is it in possession of them or any part of them.

(14) The value of these lands before the obstructions aforesaid were put in and upon the said river was about $30 per acre. The value of the rice plantation, 404.53 acres, thus taken, amounts to $10,000.

(15) The effect upon the said plantation was first felt in 1885, upon the building of the cross-tides dam, the summit of which was finally carried up in 1890; the effect of which work and other continuing obstructions and improvements gradually increased until the year 1895, when the plaintiffs were compelled to abandon the said plantation.

### Conclusions of Law.

1. The cause of action first accrued within six years of the commencement of this action.

2. The government of the United States, in undertaking the improvement of the navigation of the Savannah river, through its proper officers thereto empowered by acts of congress, was and is exercising its lawful power of eminent domain, and its power to regulate commerce and improve navigation.

3. The facts found show that by reason of the obstructions so placed in the Savannah river and the dumping of mud and sand therein, the water of the river has been directly backed up and against the banks of this plantation, and forced on the land; the superinduced addition of water actually invading it, destroying its drainage, and through seepage and percolation raising the level of the water within the plantation to the level of the water in the river, and, in addition thereto, holding back and restraining in, over, and upon said plantation the freshets, the water from which was retained upon the same; by all of which the plantation has been rendered absolutely valueless. All of which is the result of the government improvements and works, and without which its purposes could not be carried out and effected. This is a "taking," within the meaning of the fifth amendment.

4. The plantation of the plaintiffs being actually invaded by the superinduced addition of the water directly caused by the government dams, obstructions, and works backing up the water of the river, and raising the water level at and upon and in the rice plantation, and holding back and retaining upon the same the freshets, and making the same absolutely unfit for the cultivation of rice or any other known article, and plaintiffs having been compelled thereby to abandon their plantation, and being practically ousted of possession, and this being a permanent and continued condition, and the plantation being there-

by rendered irreclaimable and become of no value, renders the action of the government a taking of land for public purposes, within the meaning of the fifth amendment to the constitution, for which compensation is due to the plaintiffs.

5. The plaintiffs are entitled to just compensation for the taking of 404.53 acres of land. This is estimated to be $10,000, the value of the lands so taken, for which amount let the plaintiffs have judgment.